UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADRIAN BROWN,

                          Petitioner,                    **DECISION AND ORDER**

        -vs-                               No. 02-CV-6454

NEW YORK STATE,

                          Respondent.

_____

## INTRODUCTION

Adrian Brown ("Brown") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the evening of July 17, 1997, Brown shot his then-girlfriend, Lakisha Marion ("Marion"), during an argument. Apparently, he could not find his hat and his bandanna, and he believed that she had them. Marion suffered severe injuries to her left arm and face but miraculously survived the incident. Brown was charged with two counts of assault–assault with intent to cause serious physical injury and "depraved indifference" assault (N.Y. Penal Law §§ 120.10(1), (3)). Brown was tried in Monroe County Court (Attilio, J.) before a jury which found him guilty of intentional assault as charged in the first count of the indictment. Brown was sentenced to 12½ to 25 years imprisonment.

Proceeding *pro se*, Brown moved under New York Criminal Procedure Law ("C.P.L.") §

330.30 to set aside the verdict, but this motion was denied. Represented by new counsel, Brown

then appealed his conviction to the Appellate Division, Fourth Department, of New York State

Supreme Court. That court unanimously affirmed the conviction on May 2, 1001. *People v.*

*Brown*, 283 A.D.2d 1004, 725 N.Y.S.2d 253 (4th Dept. 2001). The New York Court of Appeals

denied leave to appeal on June 26, 2001. *People v. Brown*, 96 N.Y.2d 860, 730 N.Y.S.2d 34

(2001).  Brown's motion for reconsideration was denied on August 6, 2001. *People v. Brown*, 96

N.Y.2d 916, 732 N.Y.S.2d 633 (2001). While his direct appeal was pending, Brown collaterally

attacked his conviction by means of a motion to vacate the judgment pursuant to C.P.L. § 440.10.

That was denied by the trial court on June 28, 1999. *See* A.84-87.[1]

This Federal habeas petition followed in which Brown asserts numerous grounds for

relief: (1) the trial court erred in accepting prosecutor's explanation for peremptory challenge of a

black female prospective juror (hereinafter Ms. I.); (2) trial counsel was ineffective for failing to

move for a mistrial on a multitude of bases, including the prosecution's (a) failure to disclose

alleged *Brady*[2] material, (b) failure to disclose the grand jury statements of certain trial witnesses,

(c) reliance upon perjured grand jury testimony by the victim, (d) failure to correct clerical

mistakes in the grand jury minutes of the victim's testimony, (e) "failure to disclose *Sandoval*[3]

testimony," (f) the making of incorrect statements regarding petitioner's prior convictions, and

---

[1]  Citations to "A.__" refer to the Appendix of Exhibits submitted by respondent in connection with its answer (Docket #13) to the instant habeas petition.  Citations herein to "T.__" refer to the trial transcript.

[2] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that suppression by the prosecution of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[3] *People v. Sandoval*, 34 N.Y.2d 371 (1974).  Under New York law, a criminal defendant who testifies may be cross-examined regarding prior crimes and bad acts that bear on his credibility, veracity or honesty.

(g) violation of petitioner's State statutory right to a speedy trial; (3) trial counsel was ineffective in failing to object to the trial court's dismissal of jurors after *voir dire* had begun and thereby preserve the issue for appeal; (4) appellate counsel was ineffective in failing to argue that defense counsel "didn't make proper motions to obtain petitioners['] rights" (Brown apparently is referring to all of the above-mentioned mistrial motions that counsel should have made but did not); (5) appellate counsel was ineffective in failing to argue that a *Batson*[4] violation occurred at trial with regard to the striking of Ms. I; and (6) appellate counsel was ineffective in failing to argue that trial counsel was ineffective in failing to request a trial order of dismissal on the ground that the evidence against petitioner was insufficient to support the conviction and failing to argue that the accomplice testimony was insufficient. *See* Amended Petition at 4-20 (Docket ## 7, 8).[5]

For the reasons set forth below, Brown's claims for habeas relief are denied, and the petition is dismissed.

## DISCUSSION

## I.   Exhaustion

A petitioner must exhaust all available State remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in Federal court. 28 U.S.C. § 2254(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of State remedies requirement means that the petitioner must

---

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[5] Brown submitted two pleadings labeled "Amended Petition" on different dates; they appear to be handwritten copies of the same document.

have presented his constitutional claim to the highest State court from which a decision can be

obtained.  *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933

F.2d 117, 119 (2d Cir. 1991)).  A claim is properly exhausted when the State court is fairly

apprised of the claim's Federal nature and of the factual and legal premises underlying the claim.

*Grey*, 933 F.2d at 119-20.

Respondent asserts the affirmative defenses of non-exhaustion with respect to all of

Brown's claims. I agree with respondent that Brown's claims of ineffective assistance of

appellate counsel are unexhausted because they were not raised upon direct appeal, and Brown

never filed an application with the Appellate Division for a writ of error *coram nobis*, the method

by which defendants in New York collaterally challenge the performance of their appellate

counsel. Because there is no time limit for filing a *coram nobis* application, Brown still could

return to State court and file such an application. Thus, his ineffective assistance of appellate

counsel claims remain unexhausted.

Brown's *Batson* claim stemming from trial court's ruling on the prosecutor's peremptory

challenge of a black female prospective juror also has not been presented to the state courts.

However, that claim is procedurally defaulted because Brown faces an absence of corrective

process were he to return to the State courts in order to exhaust the claim, *Grey*, 933 F.2d at 120-

21, because he has already used the one appeal to the New York Court of Appeals to which he is

entitled.  *See* N.Y. Court Rule § 500.10(a).  Although Brown could bring a motion to vacate the

judgment pursuant to C.P.L. § 440.10, raising this issue on such a motion would be futile; the

State court would deny the claim pursuant to C.P.L. § 440.10(2)(c) since Brown could have

raised it on direct appeal but unjustifiably failed to do so. Thus, although procedurally defaulted,

Brown's *Batson* claim is "deemed exhausted." *See Grey*, 933 F.2d at 120-21.

I am precluded from considering this procedurally defaulted claim unless Brown "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (a fundamental miscarriage of justice requires a showing of "actual innocence"). Brown does not allege cause or prejudice, nor does he attempt to show that a fundamental miscarriage of justice will occur should I decline to review this claim. Indeed, I find no basis on this record for overlooking the procedural default. Therefore, Brown's claim that the trial court's acceptance of the prosecution's reason for dismissing the black juror is precluded from habeas review. In any event, the claim is without merit. As discussed below, the prosecution's rejection of Ms. I. as a juror did not amount to a *Batson* violation.

## II.    Petitioner's unexhausted claims warrant denial under 28 U.S.C. § 2254(b)(2)

In the past, a State prisoner's Federal habeas petition had to be dismissed if the petitioner did not exhaust available State remedies as to any of his Federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, an exception to the exhaustion requirement set forth in *Rose v. Lundy* has been provided for by statute. Now, pursuant to AEDPA,[6] a district court may, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Section § 2254(b)(2) allows a district court to reach the merits of a habeas corpus

---

[6]  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." *Steele v. Walter*, 11 F. Supp.2d 252, 257 (W.D.N.Y. 1998) (quoting *Cowan v. Artuz*, 1996 WL 631726, at *5 (S.D.N.Y. 1996) (quoted in *Loving v. O'Keefe*, 960 F. Supp. 46, 49 (S.D.N.Y. 1997)).

Although the Second Circuit has not yet articulated a standard for determining when unexhausted claims may be denied on the merits, the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for denying unexhausted claims. *See, e.g., Naranjo v. Filion*, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases).[7] A minority of courts have expressed the test for denial under § 2254(b)(2) as whether "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." *Id.* (quoting *Hernandez v. Lord*, 2000 WL 1010975, at *4-5 & n.8 (S.D.N.Y. July 21, 2000) (citing cases, and analyzing the diverging views without deciding which standard is appropriate)) (internal quotations omitted in original).

As discussed below, Brown's unexhausted ineffective assistance of appellate counsel claims fail either standard, as they are both patently frivolous and entirely meritless; thus the Court can address the remaining claims raised in Brown's habeas petition.

## III.   Procedural Default

The Supreme Court has made it clear that, absent a showing of cause and prejudice, or that a fundamental miscarriage of justice will occur, a Federal habeas court may not review a

---

[7]   *Jones v. Senkowski*, 2002 WL 246451 (2d Cir. May 22, 2002), *amended by Jones v. Senkowski*, 42 Fed. Appx. 485, 2002 WL 1032589 (2d Cir. May 22, 2002), *cert. denied*, 537 U.S. 1177 (2003).

Federal claim that has been defaulted in State court pursuant to an independent and adequate

State procedural ground. *See*, *e.g.*,  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). I agree

with respondent that Brown's ineffective assistance of trial counsel claims are subject to a

procedural default because the State court disposed of them on procedural grounds.

In his C.P.L. § 440.10 motion to vacate the judgment, Brown asserted claims of

ineffective assistance of trial counsel premised upon the same grounds alleged in this petition. In

denying the motion, the State court quoted the text of C.P.L. § 440.10(2)(b) and stated that

Brown "has raised no issue not apparent in the record of the proceedings below, thus permitting

adequate review of the instant issues on appeal." A.86-87. Section 440.10(2)(b) provides that

"the court must deny a motion to vacate judgment when . . . [t]he judgment is, at the time of the

motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to

the ground or issue raised upon the motion to permit adequate review thereof upon such an

appeal." N.Y. Crim. Proc. Law § 440.10(2)(b). New York Criminal Procedure Law §

440.10(2)(b) has been recognized as an "independent and adequate" State procedural ground by

courts in this Circuit. *E.g.*, *Hemphill v. Senkowski*, 2004 WL 943567, at *8 (S.D.N.Y. May 3,

2004); *Perez v. Hollins*, 2004 WL 307271, at *3 (S.D.N.Y. Feb. 5, 2004); *Powell v. Miller*, 2001

WL 1708815, at *10 (W.D.N.Y. Nov. 5, 2001).

To overcome the procedural bar, Brown needs to show both "cause" for not raising the

claim in State court and "prejudice" resulting therefrom, or (2) that a "fundamental miscarriage

of justice" will result if the claim is not addressed in Federal court. *Coleman*, 501 U.S. at 750;

*Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002). A petitioner establishes "cause" for failing to

raise a claim when he can show that "some objective factor external to the defense" prevented

him from following the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show

"prejudice," the petitioner must demonstrate that the constitutional error worked to his "actual

and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). Brown has

alleged neither cause for, nor prejudice resulting from, the failure to assert these claims on direct

appeal.

Presumably, Brown would allege that appellate counsel's deficient representation was

"cause" for the procedural default. Although ineffective assistance of counsel can constitute

cause, it may only do so when the representation is so ineffective that it violates the client's Sixth

Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Bloomer v.*

*United States,* 162 F.3d 187, 191 n.1 (2d Cir. 1998). Based upon my review of the record, all of

the alleged errors committed by trial counsel are factually baseless, without legal merit, or both.

Thus, appellate counsel cannot be found ineffective for omitting claims regarding trial counsel's

performance which had no likelihood of success on appeal. Moreover, a defendant cannot be

prejudiced by appellate counsel's failure to raise meritless claims. *See Mayo v. Henderson* 13

F.3d 528, 534 (2d Cir. 1994) ("To establish prejudice in the appellate context, a petitioner must

demonstrate that 'there was a "reasonable probability" that [his] claim would have been

successful . . . .'" (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.

1992)). Therefore, Brown is unable to establish the requisite cause and prejudice to excuse the

procedural default.

In order to warrant invocation of the "fundamental miscarriage of justice" exception,

Brown must show that "a constitutional violation has probably resulted in the conviction of one

who is actually innocent." *Carrier*, 477 U.S. at 496. Brown does not suggest that he is actually

innocent of the charge for which he was convicted and the facts of this case do not support such a conclusion. Indeed, I cannot find that a fundamental miscarriage of justice will result if these claims are not considered. Accordingly, they are barred from habeas review. In any event, as the foregoing discussion of Brown's appellate counsel claims makes clear, the alleged errors of trial counsel were not really errors at all. The Court has reviewed the transcript of the State court proceedings, and it is evident that Brown received skilled representation from his attorney at trial.

**IV.** **Merits of the Petition**

    **A.**    **Ineffective assistance of appellate counsel**

        **1.**    **Legal standard**

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) ("*Strickland*"), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, it also applies to claims regarding the performance of appellate counsel. *Mayo*, 13 F.3d at 533 (citing, *e.g.*, *Claudio*, 982 F.2d at 803).

Appellate counsel need not present every non-frivolous argument that could be made on

petitioner's behalf. *Mayo*, 13 F.3d at 533; *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy. *Mayo*, 13 F.3d at 533; *see also Jones v. Barnes*, 463 U.S. 745, 754 (1984) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy[.]"). Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803)).  However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker. *Mayo*, 13 F.3d at 533.

### 2.  Alleged grounds of appellate counsel's ineffectiveness

#### a.  Failure to argue that trial counsel was ineffective in failure to make certain motions

In his amended petition, Brown sets forth a laundry list of motions which he alleges that trial counsel should have brought. Brown faults appellate counsel for failing to argue on direct appeal that trial counsel was deficient in these respects. As discussed in the following paragraphs, all of these motions were factually baseless, lacking in legal merit, or both.

Brown's claim premised upon the alleged failure to disclose the grand jury statements of

certain trial witnesses in violation of C.P.L. § 240.45(1)(a),[8] *see* Docket #7 at 9, is factually

baseless. The only witnesses who testified before the grand jury were Marion, the victim, and

Thomas, her mother. Thomas did not testify at trial, and therefore the prosecution was not

required to disclose the minutes of her testimony. The prosecution properly disclosed the

transcript of Marion's testimony, the only grand jury witness who testified at trial. The

individuals whom Brown lists in his petition were trial witnesses, but they did not testify before

the grand jury.

With respect to his claim that the prosecutor withheld the fact that Marion had a history

of a school assault and a pending drug charge, *see* Docket #7 at 10, Brown does not state how he

knew that Marion had a criminal record. Assuming that information was accurate, Brown did not

need the prosecutor to disclose to him information about which he already was aware. If Brown

had such information, it was incumbent upon him to relay it to his defense counsel, who could

have procured copies of Marion's record, if it in fact existed.

Brown's claim that the victim perjured herself before the grand jury is without merit. He

disagrees with Marion's description of the room where they had slept the night before and points

out that she described the gun used in the assault as a sawed-off shotgun when in fact it was a

regular 20-gauge shotgun. It is Brown's contention that this establishes that the prosecution's

case was based on perjured testimony. This does not establish perjury or a basis for mistrial.

Simply because Brown disagrees with Marion about these details does not establish that she was

lying. Moreover, neither item of information was in dispute or pertinent to the factual elements of

---

[8] ". . . [T]he prosecutor shall . . . make available to the defendant: (a) Any written or record statement, including any testimony before a grand jury . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony[.]" N.Y. Crim. Proc. Law § 240.45(1)(a).

the crimes against Brown. Marion accurately described and identified the gun at trial. In any event, defense counsel properly sought to exploit the differences in Marion's statements made at the time of the incident and at trial; it ultimately fell to the jury to determine if she was a credible witness. There was no basis on which to move for a mistrial.

Brown's claim that a mistrial should have been granted based upon uncorrected clerical errors in the grand jury minutes is frivolous and does not warrant any further discussion.

The claim that the prosecution failed "to disclose *Sandoval* testimony" does not make sense. Since the prosecution did not seek to admit defendant's prior bad acts, it was unnecessary to disclose any potential *Sandoval* material.

Brown's allegation that the prosecutor made incorrect statements regarding his prior convictions similarly is not a proper basis for a mistrial. Brown attended the *Sandoval* hearing; he or his defense counsel could have brought any error in the prosecutor's statements to the court's attention.

The claim that appellate counsel unjustifiably failed to argue that trial counsel should have moved for a mistrial on the basis that the prosecution failed to be ready for trial within six months pursuant to C.P.L. § 30.30 is without merit. Because the indictment against Brown included felony charges, the prosecution was required to be "ready for trial" within six months of the commencement of the criminal action. N.Y. Crim. Proc. Law § 30.30(1)(a); *People v. Kendzia*, 64 N.Y.2d 331, 337, 486 N.Y.S.2d 888 (1985). Here, the prosecutor timely announced readiness for trial at Brown's arraignment on September 25, 1997, in just over three months from the commission of the offense. Moreover, I note that Brown has failed to consider all of the time that must be excluded from the speedy-trial time period due to the filing of motions by the

defense. *See* N.Y. Crim. Proc. Law § 30.30(4).

His claim that appellate counsel should have raised an issue concerning the trial court's erroneous dismissal of a juror after *voir dire* is baseless. The corrected trial minutes and the affirmation of the court reporter who was present, *see* T.122, A.160-61, indicated that defense counsel in fact had acquiesced in the trial court's dismissal of a male black juror (hereinafter Mr. S.) who had stated a conflict. In any event, Brown has not shown what possible prejudice could have accrued to him as a result of the dismissal of this juror.

With respect to appellate counsel's failure to assert that a *Batson* violation occurred at trial with regard to the striking of Ms. I., as discussed below, I find that there was no *Batson* violation. Therefore, Brown was not prejudiced by appellate counsel's failure to raise this claim which would not have been successful on appeal.

Contrary to Brown's contention, defense counsel sought a trial order of dismissal on the ground that the evidence against petitioner was insufficient to go to the jury, but it was denied. T.219-20. Even if appellate counsel had raised an insufficiency argument on direct appeal, it would not have succeeded. Defendants seeking to have their convictions overturned on the basis that the evidence was insufficient to convict bear an extremely heavy burden. A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Here, the evidence against Brown was overwhelming.

First of all, there was no question as to the identity of the perpetrator in this case since the

victim was Brown's then-girlfriend and had spent the previous night at his house. Marion

testified she was lying in the floor sleeping when Brown came into the room and began asking

her, in an agitated manner, where his hat and bandanna were. She told him that she did not have

them, and then he straddled her chest and pulled a shotgun out from under the sofa. Brown

emptied two bullets out of the gun, told her that he was going to shoot her if she did not give him

the hat, and put the bullets back into gun. Marion was crying and pleading for her life as Brown

pointed the gun in her face at "[r]eal close range." She put her left arm over her face to shield

herself. Then, Brown shot her.

    While Marion was screaming for help, Brown changed out of his blood-stained clothes.

Brown told her that he "didn't mean to shoot [her], and was [she] going to come to court[?]"

T.198. Marion ran upstairs and asked Brown's mother to call an ambulance. Marion suffered a

wound to her forehead and severe wounds to her left wrist; the police officer who responded to

the scene testified that about two inches of her wrist had been blown off. By the time the police

arrived, Brown had left the house.

    On cross-examination, defense counsel hammered Marion about her previous testimony

to the grand jury and her statements to the police in which she did not explicitly say that Brown

re-loaded the gun after taking the bullets out. Defense counsel suggested that this was proof that

Brown never reloaded the gun or shot her. Defense counsel also argued that Brown's statement

that he did not mean to shoot Marion established that he did not act intentionally.

     Here, the jury chose to credit Marion's testimony and convict Brown despite the slight

inconsistencies in her testimony. The "jury is exclusively responsible for determining a witness'

credibility." *Simpson v. Portuondo*, 2001 WL 830946, at *8 (S.D.N.Y. July 12, 2001) (*citing*

*United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993)) (citations omitted).  A reviewing court may not "'reassess the fact specific credibility judgments by juries or . . . weigh conflicting testimony.'" *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992)).  On collateral review, the court "'must presume that the jury resolved any questions of credibility in favor of the prosecution.'" *Id.* (quoting *Anderson*, 1992 WL 225576, at *3).

In this case, the jury's decision primarily was a matter of choosing whether to believe Brown's version of events or to believe the version offered by the prosecution. The jury chose to believe the prosecution's witnesses, and this Court cannot say that on all the evidence presented no rational jury could have found Brown guilty beyond a reasonable doubt of intentional assault. *See Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981). Upon the record before the Court, it is clear that an insufficiency-of-the-evidence argument had no realistic chance of success. Appellate counsel was not deficient in omitting this extremely weak argument from Brown's brief on appeal.

Lastly, Brown points to testimony by the police technician who, on cross-examination, stated that he did not find fingerprints on the gun usable for comparison and that he could not determine who had handled the gun or the shells. T.238-39. Brown contends that this establishes that he was convicted in violation of C.P.L. § 60.22(1), which provides that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense. " N.Y. Crim. Proc. Law § 60.22(1). First of all, Section 60.22 is not in any way applicable to Brown's case because there was no accomplice involved in this incident–the only individuals

involved were Brown and the victim, who obviously was an eyewitness to the crime. To the extent that Brown may be arguing that the prosecution lacked physical evidence of his culpability, the presence of fingerprints on the shotgun was not required in order to tie Brown to the commission of this crime. *Cf.*, *e.g.*, *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) ("Although appellants emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses were not credible, a 'conviction may be based on circumstantial evidence and inferences based upon the evidence and the jury is exclusively responsible for determining a witness' credibility.'") (quoting *United States v. Strauss*, 999 F.2d at 696) (citations omitted in original).

### b.      Failure to raise *Batson* claim

In *Batson v. Kentucky*, *supra*, the Supreme Court resolved certain evidentiary problems faced by defendants attempting to establish racial discrimination in the exercise of peremptory challenges.  *Batson* held that a defendant can establish a *prima facie* case of purposeful discrimination by offering evidence  solely from the *voir dire* at his trial.  *Batson*, 476 U.S. at 96 (rejecting burden of proof imposed by *Swain v. Alabama*, 380 U.S. 202 (1965)). The Supreme Court went on to establish a three-step burden-shifting framework for evaluating a claim that a peremptory strike was race-based. *Batson*, 476 U.S. at 96-98.

First, the movant–*i.e.*, the party challenging the other party's attempted peremptory strike–must make a *prima facie* case that the nonmovant's peremptory challenge is based on race. *Id.*; *Hernandez v. New York*, 500 U.S. 352, 358 (1991). Next, the nonmovant must adduce a race-neutral reason for the challenge. *Batson*, 476 U.S. at 97-98; *Hernandez*, 500 U.S. at 358-59.  At this step, the nonmovant's burden is quite low. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995)

(*per curiam*) (race-neutral reason given need not be persuasive or even plausible).

Lastly, the trial court must determine whether the movant carried its burden of demonstrating by a preponderance of the evidence that the peremptory challenge at issue was based on race. *Batson*, 476 U.S. at 96, 98; *Hernandez*, 500 U.S. at 359. The burden remains with the moving party throughout the three *Batson* steps; "[i]t is not until the *third* step that the persuasiveness of the justification becomes relevant–the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett*, 514 U.S. at 768 (emphasis in original).

Batson held that to make out a *prima facie* case, a defendant must demonstrate that (1) he is a member of a "cognizable racial group"; (2) that the prosecutor has exercised peremptory challenges to remove from the juror *venire* persons of the defendant's race; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to improperly exclude potential jurors. *Batson*, 476 U.S. 96.[9]

During *voir dire*, the prosecutor asked to use a peremptory challenge to remove a black female juror, Ms. I. Defense counsel responded with a *Batson* objection, noting that Ms. I. was one of only two black venirepersons among the panel of approximately sixty prospective jurors. T.106. The court asked the prosecutor to provide a reason for the removal of the juror and the prosecutor responded,

She works for a prison ministry. As you recall, she is at a prison every month

---

[9] The first *Batson* requirement has been overruled by *Powers v. Ohio*, which held that under the Equal Protection clause, a defendant has standing to object to race-based exclusions of jurors through peremptory challenges whether or not the defendant and the excluded jurors share the same race. *Powers*, 499 U.S. at 415-16. *Powers* thus also modified the second *Batson* requirement. However, the effect of *Powers* has no bearing on the case at hand since Brown and Ms. I. are both black.

working with a church group. She has two step-sons convicted of crimes, she insinuated waited [*sic*] that they spent time in jail. She has kids generally the age of the defendant, which would allow her to associate with the defendant. . . . [T]hose are the reasons for the peremptory challenges. . . ."

T.107. The court stated that the prosecution's reason was not racially motivated and denied the defense motion. *Id.*

Brown claims that the prosecutor's striking of Ms. I., who was black, in itself raises an inference that the prosecutor used the peremptory challenges to exclude potential jurors on the basis of their race. The Court doubts that this is sufficient to establish the third element of a *prima facie Batson* claim. *See United States v. Stavroulakis*, 952 F.2d 686, 696 (2d Cir.) (holding that "[r]eference merely to the race of one excused venireman, without more, is insufficient to raise an inference of discrimination" under *Powers v. Ohio*), *cert. denied*, 504 U.S. 926 (1992); In *Stavroulakis*, the Second Circuit went on to suggest, however, that "[w]hen other factors such as patterns of strikes or lines of questioning combine with race, the inference of discrimination may arise." *Id.* On the record before it, this Court can find no additional factors that would, in combination with the dismissal of Ms. I., create an inference of discrimination.

Even assuming for the sake of argument that Brown has made out a *prima facie Batson* challenge, he cannot fulfill his burden on the remaining steps. Although arguably not required to do so, the prosecutor articulated a legitimate explanation for his decision to excuse Ms. I. – that her volunteer work at the prison combined with the fact that she had close relatives who had been convicted of crimes would tend to make her biased towards the defense. *Compare with Copeland v. Walker*, 258 F. Supp.2d 105, 126 (E.D.N.Y. 2003) (finding that record showed "plausible, race-neutral reasons for the exercise of peremptory challenges" where one excused black jury had

a "close" cousin who had previously been convicted of multiple murders) (citing *United States v.*

*Lampkins*, 47 F.3d 175 (7th Cir. 1995) (fact that prospective juror had relatives convicted of a

crime justified peremptory challenge despite allegation of purposeful discrimination)); *People v.*

*Barney*, 295 A.D.2d 1001, 743 N.Y.S.2d 793, 794 (4th Dept. 2002) (holding that trial court

properly determined that the prosecutor's explanation for excusing black female prospective

juror was race-neutral and not pretextual where juror stated that her son had been convicted

twelve years earlier and that she had strong feelings about the outcome of the trial and the way in

which it was handled); *People v. Anaya*, 206 A.D.2d 380, 614 N.Y.S.2d 59, 60 (2d Dept. 1994)

(fact that prospective juror's son recently had been convicted of crime in county in which

defendant was being prosecuted was legitimate race-neutral ground for exercising peremptory

challenge); *People v. Dorsey*, 3 A.D.3d 590, 591, 770 N.Y.S.2d 462, 464 (3d Dept. 2004)

(affirming trial court's rejection of *Batson* challenge where, although pattern of discrimination

"arguably established," the People's explanation--that the juror's answers reflected potential bias

against correction officers and sympathy toward inmates stemming from her experiences with

and ill will toward her ex-husband, a correction officer--was race-neutral and not shown to be

pretextual). The prosecutor's stated reasons at Brown's trial certainly were sufficient to fulfill the

State's obligation at the second stage of the *Batson* inquiry.  *See Purkett v. Elem*, 514 U.S. at

768.

Brown contends that the prosecutor's reasons for the strike were unsupported by the

record and false. I have reviewed the record, and the reasons articulated the prosecutor are

supported by Ms. I.'s actual responses during *voir dire*. *See* T.69, 72-73.  "At this [second] step

of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a

-19-

discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360 (plurality opinion). On the record before me, I can find neither overt nor implicit discriminatory intent in the prosecutor's reason for striking Ms. I. from the jury.

With regard to the third step of the burden-shifting analysis, Brown offered nothing at trial or on habeas review to show that the prosecutor purposefully discriminated against the excused black juror. Thus, Brown has supplied the Court with no evidence on which appellate counsel could have argued persuasively that the prosecutor engaged in discriminatory tactics.

Brown has failed to show that appellate counsel omitted obvious, potentially meritorious arguments from her brief on direct appeal. Indeed, all of the arguments that allegedly should have been raised had virtually no chance of success. For this reason, I cannot find that Brown was prejudiced by appellate counsel's failure to raise the arguments put forth by Brown. Furthermore, I find that Brown was ably represented by the public defender's office on direct appeal. If truth be told, appellate counsel did not have much with which to work: Brown's trial was brief and relatively error-free, and the proof against him was very compelling. Counsel did the best she could with a difficult case.

## CONCLUSION

For the reasons stated above, Adrian Brown's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Brown has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:          June 10, 2005
                Rochester, New York.